FILED
2011 Mar-11  PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| LATRICE WILLIAMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  2:08-cv-02094-HGD |
| | ) | |
| FAIRFIELD BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant | ) | |

## <u>MEMORANDUM OPINION</u>

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant.  (Doc. 13).  The parties have consented to the exercise of jurisdiction by the magistrate judge in accordance with the provisions of 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.

Plaintiff, Latrice Williams, filed a complaint asserting that she was discriminated against by her employer, the Fairfield Board of Education, based on her religion such that she was constructively fired from her position as a kindergarten teacher.  She also alleges that she was subjected to wrongful termination and/or retaliatory discharge when her probationary employment contract was not renewed

as a result of her filing grievances against co-workers which were not handled according to the Fairfield Board of Education Policy Manual.

Defendant, Fairfield Board of Education, has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., (Doc. 13) and provided evidentiary submissions in support of this motion (Docs. 14 & 15). In its motion, defendant asserts it is entitled to summary judgment because plaintiff never advised her supervisors or anyone in the chain of command at the Fairfield Board of Education that she was being subjected to religion-based harassment and because there was just cause (*i.e.*, a legitimate, non-discriminatory reason) for her termination from employment. Plaintiff has not responded to the motion or provided any evidentiary submissions in opposition to defendant's motion for summary judgment. For the reasons set forth herein, defendant's motion for summary judgment is due to be granted.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[1] The party seeking summary judgment bears "the initial burden

---

[1] Rule 56(e) of the Federal Rules of Civil Procedure provides:

**Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment also always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. However, "[i]n reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr*

---

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

*GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992), *cert. denied*, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993) (internal citations and quotations omitted). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081, 125 S.Ct. 869, 160 L.Ed.2d 825 (2005).


## ANALYSIS

## I. Background

In her EEOC Charge of Discrimination, Ms. Williams alleged:

> [T]he Special Education teacher, [a member of the] Baptist [denomination], has made negative comments about my religion. The Special Education teacher is Baptist and has made negative comments. I have been treated less favorably than similarly situated employees claiming they are Baptist.

(Doc. 14-2, Willams Depo., at Ex. 2, Charge of Discrimination).

Williams does not know if the special education teacher, Ms. Rogers, ever communicated to the school principal, Ms. D. Chiles, about plaintiff's religion. Nor did plaintiff ever complain to anyone in the Fairfield school administration about what Ms. Rogers had said to her. (*Id.* at 96-97). According to her Charge of Discrimination, the earliest and latest dates on which discrimination occurred was

May 5, 2008. In other words, plaintiff alleges that she was the subject of discrimination *only* on May 5, 2008. (*Id.* at Ex. 2, Charge of Discrimination).

Plaintiff expands this claim by alleging in her amended complaint that she was subjected to verbal harassment about her place of worship by her co-workers and administrative personnel. (Doc. 6, Amended Complaint, at ¶ 8). It is undisputed that plaintiff was hired by the Fairfield Board of Education on a probationary basis for the 2007-2008 school year. At the end of that school year, her contract was not renewed. (*Id.* at ¶ 15). Prior to receiving notification of her termination, Williams had filed a grievance against her supervisor (Principal Chiles), alleging that Ms. Chiles refused to assist her with a non-compliant child who had been acting inappropriately in plaintiff's class. (*Id.* at ¶ 8; Doc. 14-2, Williams Depo., at 16). She also alleged that she was harassed by Mrs. Gardner, a school secretary, regarding turning in some materials from her room. She alleges also that Mrs. Gardner accused her of tearing up a copier machine. (Doc. 14-2, Williams Depo., at 23, 28).

Williams complains that, on one occasion, a Friday "casual clothing" day, she wore a t-shirt and tennis shoes. The t-shirt had the name of her church, Faith Chapel, on it. Ms. Chiles asked her to change her clothes, saying that her attire was inappropriate. (*Id.* at 88-89).

On another occasion, Mrs. Gardner asked Williams not to read a religious book on a school bus that was leaving for a field trip.   Williams never discussed this incident with anyone.   (*Id.* at 90-92).   She also testified that teachers would sometimes joke about her religion:

> Q.  Did anyone else during the school year, say anything to you that related to your religion or your interest in religion or your wardrobe?
>
> A.  Just like sometimes  little poking fun-type stuff; like when I'm in the cafeteria.  "What are you doing over there?"  You know, just information about what are we doing at the church, you know, things that are hearsay.
>
> Q.  Joking is not harassment.  I'm asking you about harassment.  Who else, other than Ms. Gardner asking you about the book, harassed you because of your religion while you were employed there?
>
> A.  And the clothing.  Pretty much, I mean, right now that's all I can really collect.

(*Id.* at 92).

Ms. Williams also filed a grievance against Principal Chiles regarding an event that allegedly occurred on April 8, 2008.  This date is after she had undergone two (of three) performance evaluations which reflected poor performance on her part.  (*Id.* at 69).  Her grievance with Ms. Chiles involved a problem with a child in Ms. Williams' class.  Williams complained that, when she brought the child to Ms. Chiles

for assistance, Ms. Chiles told her to handle it in an "unpleasant" way.  Her grievance did not contain any complaint about being the subject of religious-based discrimination.  (*Id.* at 74-75).

When Williams met with Fairfield School Superintendent Greene and Director of Personnel Frieda Bush regarding her complaint against Chiles, Williams stated that Chiles was not giving her help in the classroom.  At no time during this meeting did she mention that she was the subject of religious-based harassment.  (*Id.* at 77-79).  In fact, at no time during that school year did Williams ever tell Bush (or anyone else) that she was subjected to religious discrimination by anyone in the school system.  (Doc. 14-3, Bush Aff., at 1).  Furthermore, as Director of Personnel, Bush was unaware of Williams' religion.  (*Id.*).  According to Ms. Bush, the decision to recommend to the Board of Education that Williams' contract for employment  not be renewed was based solely on her poor job performance.  (*Id.*).

Williams was evaluated on three occasions during her one school year at Fairfield.  On each occasion, after the evaluations the principal met with her and she signed each without contesting the results of any. (Doc. 14-2, Williams Depo., at 56-59).  In an evaluation that occurred on February 13, 2008, plaintiff was rated at a level 2 ("needs improvement") in five areas.  In a March 12, 2008, evaluation, Williams received a number of level 1 and level 2 evaluations and only one level 3.

This is a very poor evaluation.  (*Id.* at 64-65).  Williams admits that she did poorly on this evaluation.  (*Id.* at 67-68).  She was evaluated again in April of 2008 and again did poorly.

Ms. Adrene Bishop, Director of Federal Programs and Special Education for the Fairfield Board of Education, formally evaluated Williams on two of three occasions.  (Doc. 14-4, Bishop Aff., at p. 1).  According to Bishop, Williams performed poorly as a teacher, and her contract was not renewed because of her poor job performance.  (*Id.*).  Although Williams never made any comments to Bishop about religious harassment, Bishop states the decision to terminate Williams  would have been made regardless.  (*Id.*).  Bishop based her evaluations on her observations of Williams in the classroom.  According to Bishop, Williams was unable to engage her students, could not structure her classroom in a meaningful way, was not prepared, and failed to implement Individualized Education Plans (IEPs) for her special education students.  (*Id.* at 2).

Bishop evaluated Williams on March 12 and April 24, 2008.  The first time Bush performed an evaluation of Williams occurred before Williams filed her grievance against Ms. Chiles.  The second occurred afterwards.  In the first evaluation, Bishop found five unsatisfactory performance areas and 11 areas where she needed improvement.  (*Id.* at 3).  On the second occasion, Bishop found 15 areas

where Williams needed improvement.  (*Id.*).  Subsequently, it was recommended to the Fairfield Board of Education that Williams' contract not be renewed.

Although Williams attended the meeting of the Fairfield Board of Education meeting where they voted to accept the recommendation not to renew her contract, there was no discussion of Williams' religion and she did not tell the members of the Board that she believed that she was the subject of religious discrimination.  (*Id.* at 1-2).  There is no evidence that anyone on the Board of Education was aware of any claims of religious discrimination by plaintiff and no evidence that the members of the Board of Education made the decision not to renew plaintiff's employment contract based on any religiously discriminatory reason.

Williams filed her grievance against Chiles on April 14, 2008.  Although the decision to not renew Williams' contract came approximately a month after Williams filed a grievance against Ms. Chiles, there is no evidence, other than the temporal proximity, to suggest that the grievance was related in any way to the decision to terminate Williams.  According to Bush, regardless of anything alleged by Williams regarding her religion or retaliation, because of her poor performance during the school year, the decision to terminate her would have been the same.  (*Id.* at 2).

Likewise, Williams admitted that she never told anyone on the Fairfield Board of Education that she believed she was the subject of religious harassment (Doc. 14-2,

Williams Depo., at 75-82), and Williams knows of no member of the Board of Education that has ever said or written anything that would reflect religious discrimination against her. (*Id.* at 81-82).

## B.  Legal Conclusions

Title 42 U.S.C. § 2000(e)(2) states:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action.  A Title VII action may be based not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.  *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (internal quotations and citations omitted).

In her EEOC Charge of Discrimination, Ms. Williams alleged that:

> [T]he Special Education teacher, [a member of the] Baptist [denomination], has made negative comments about my

religion.  The Special Education  teacher is Baptist and has
made  negative  comments.    I  have  been  treated  less
favorably than similarly situated employees claiming they
are Baptist.

(Doc. 14-2, Williams Depo., at Ex. 2, Charge of Discrimination).

In *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970), the
Fifth  Circuit  Court  of  Appeals  stated,  addressing  the  degree  to  which  the
discrimination alleged in a Title VII complaint may vary from that described in the
EEOC charge, that "the allegations in a judicial *complaint* . . . 'may encompass any
kind of discrimination like or related to the allegations contained in the charge and
growing  out  of  such  allegation  during  the  pendency  of  the  case  before  the
Commission.'"  *Id., quoting King v. Georgia Power Co.*, 295  F.Supp. 943, 947
(W.D.Ga. 1968) (emphasis added); *see also Evans v. U.S. Pipe & Foundry Co.*, 696
F.2d 925, 928-29 (11th Cir. 1983).  The court further stated that "the 'scope' of the
judicial complaint is limited to the 'scope' of the EEOC investigation which can
reasonably be expected to grow out of the charge of discrimination."  *Id.*

Here, plaintiff's charge of discrimination asserts that another teacher made
negative comments about her religion and that she had been treated less favorably
than others who were Baptist.  In her deposition, she expanded her complaints to
include incidents when a secretary advised her not to read a religious book on a field

trip and accused her of stealing material and of tearing up a copy machine, and when she was told she was not dressed appropriately on a "casual day" when she came dressed in blue jeans, tennis shoes and a t-shirt containing the name of her church. She also claimed that school staff and administrators made jokes about her church.

It is difficult to see how any of these complaints could reasonably be expected to have grown out of the initial charges of discrimination wherein she asserted that she was treated differently than others who claim to be Baptist.  She has failed to identify others who are alleged to be Baptist who were treated more favorably in similar situations.  Thus, most of the alleged acts of discrimination are outside the scope of her EEOC Charge of Discrimination and do not support her claim for relief because they were not properly exhausted in a timely manner.

This is especially true with regard to plaintiff's claim of retaliation.  In many cases, the act of retaliation that is alleged is related to actions taken by an employer after the employer learns that the plaintiff has filed a charge of discrimination or filed a discrimination suit under Title VII.  In this case, the alleged act of retaliation is the failure to renew plaintiff's contract after she filed a grievance against the school principal, Ms. Chiles.

Plaintiff's notice of termination occurred when the Fairfield Board of Education voted not to renew her contract on or about May 16, 2008.  She

acknowledges that she was present at that meeting. She did not file her Charge of Discrimination until May 22, 2008. Thus, she was aware of this alleged act of retaliation at the time she filed this charge with the EEOC. Nonetheless, her Charge of Discrimination makes no mention of this alleged act of retaliation. In fact, her charge alleges that the discrimination she complains of occurred only on May 5, 2008. "Each discriminatory act starts a new clock for filing charges alleging that act." *Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002). "A discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." *United Airlines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

Even if it were somehow "related" to plaintiff's discrimination claim, her constructive discharge/termination, as an alleged retaliatory act, constitutes a discrete act of discrimination. *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) ("The September 2000 and April 2001 disciplinary actions are clearly discrete and independent actions, though part of what Mr. Martinez must necessarily claim is a 'continuing violation.'"); *Coleman-Adebayo v. Leavitt*, 326 F.Supp.2d 132, 138 (D.D.C. 2004) ("Individual acts of retaliation that form the basis of retaliation claims

. . . are included within the Supreme Court's list of discrete discriminatory acts, and therefore any claim stemming from those acts must be administratively exhausted."). Plaintiff has produced no evidence that she exhausted her administrative remedies for the allegedly retaliatory act of constructive discharge or termination.   Because plaintiff failed to timely exhaust her administrative remedy with respect to her claim of retaliation, the claim is barred, at least with respect to this alleged act of retaliation. *See also Terhune v. Potter*, 2009 WL 2382281, *4 (M.D.Fla. July 31,2009).  In fact, it appears that virtually all of her claims could be barred for this reason.  However, defendant did not raise this issue and there are a number of reasons in addition to this why her claims lack merit such that reliance on this particular bar is unnecessary.

A plaintiff alleging disparate treatment discrimination must first establish a *prima facie* case of intentional discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1103-04 (11th Cir. 2001); *Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).  Where the plaintiff proves her *prima facie* case by circumstantial evidence, the burden of proof shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089,

1093, 67 L.Ed.2d 207 (1981).  Then, if the defendant carries its burden, the plaintiff must be given "a full and fair opportunity to demonstrate by competent evidence" that the presumptively valid reasons offered by the defendant were a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1826; *see also Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

As a general matter, under the four-pronged *McDonnell Douglas* framework, a *prima facie* case of intentional discrimination using circumstantial evidence is established if the plaintiff shows: (1) she is a member of a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected for employment; and (4) after the rejection, the employer continued to seek applicants with the plaintiff's qualifications outside of plaintiff's particular protected class.  411 U.S. at 802, 93 S.Ct. at 1824.

More specifically, where intentional religious discrimination under Title VII is alleged, a *prima facie* case is established if the plaintiff demonstrates the challenged employment decision was made by someone who was aware of the plaintiff's religion. *See generally Beasley v. Health Care Serv. Corp.*, 940 F.2d 1085, 1088 (7th Cir. 1991) (noting the *prima facie* case for discriminatory discharge based on a plaintiff's religious practices is established by showing:  (1) the practices are

religious in nature; (2) the plaintiff called the religious practices to the employer's attention; and (3) the religious practices were the basis of the plaintiff's discharge); *cf. Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005-07 (7th Cir. 2001) (holding plaintiff failed to establish a *prima facie* case of pregnancy discrimination even though she was visibly pregnant where she could not prove the person who decided to terminate her employment knew she was pregnant); *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580-82 (3d Cir. 1996) (holding plaintiff failed to establish a *prima facie* case of pregnancy discrimination even though she told six co-workers she was pregnant where she could not provide any evidence the person who decided to terminate her employment knew she was pregnant); *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) (concluding the *McDonnell Douglas* elements did not rationally create an inference of intentional discrimination even though plaintiff filled out an application for employment and checked a box indicating his race, where plaintiff offered no evidence the decision-makers knew or saw the information concerning his race).  Accordingly, an employer cannot intentionally discriminate against an individual based on her religion unless the employer knows the individual's religion. *See Robinson*, 847 F.2d at 1316 (indicating plaintiff could not establish a *prima facie* case where there was no evidence the decision-maker knew plaintiff belonged to a protected class).  Therefore, in evaluating a charge of disparate

treatment employment discrimination, the court must focus on the actual knowledge and actions of the decision-maker. *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002), citing *Bass*, *supra*, 256 F.3d at 1105.

The decision-maker in this case is the Fairfield Board of Education. As is noted above, there is no evidence whatsoever that the Board was aware of any claims by Williams that she was the subject of discrimination or retaliation by anyone within the Fairfield school system. There is also no evidence that the Board was itself motivated by any discriminatory animus.

Even if the court were to assume that plaintiff is alleging that she was subjected to a religiously hostile environment, she could not prevail. As noted by the Supreme Court in *Morgan, supra*:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. *See* 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 348-349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("As we pointed out in *Meritor [Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986),] 'mere utterance of

an . . . epithet which engenders offensive feelings in a[n] employee,' *ibid*. (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

536 U.S. at 115, 122 S.Ct. at 2073.

Thus, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris*, 510 U.S. at 21, 114 S.Ct. 370 (citations omitted). In determining whether an actionable hostile work environment claim exists, courts look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. at 371.

None of the incidents set out by plaintiff, alone or cumulatively, amount to the kind of frequent, severe or humiliating conduct that would be sufficient to constitute a hostile environment. Likewise, she has never alleged that this conduct had any effect on her job performance. Therefore, there is no showing that she has been subject to discrimination based on a hostile environment.

In addition, defendant has not asserted that plaintiff has failed to make out a *prima facie* case of discrimination under the *McDonnell-Douglas* test, even though it is clear that she has not. However, defendant does assert that there was a legitimate, non-discriminatory reason for refusing to renew plaintiff's employment contract. Once a *prima facie* case has been established (or assumed), an employer may rebut a presumption of discrimination by clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for terminating the plaintiff. *See Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985). This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). "The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the defendant raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094-95. *See Chaney v. Southern Ry. Co.*, 847 F.2d 718, 722 (11th Cir. 1988); *Griffin v. Carlin*, 755 F.2d 1516, 1526 (11th Cir. 1985). In other words "an employer shall not be liable if it can prove that, even if it had not taken [a discriminatory factor] into account, it would have come to the same decision regarding a particular person." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242, 109 S.Ct. 1775, 1786, 104 L.Ed.2d 268 (1989).

Once an employer has provided a legitimate, non-discriminatory reason for its actions, if the plaintiff is to prevail, she then must establish, by a preponderance of the evidence, that the employer's articulated reason was a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825; *Chaney*, 847 F.2d at 722; *Conner*, 761 F.2d at 1499.

Defendant's legitimate, non-discriminatory reason for not renewing plaintiff's contract was that she performed poorly. This fact is undisputed and, in fact, plaintiff acknowledges that her evaluations were poor. Evidence submitted reflects that plaintiff's performance was not just poor; it was extremely poor. Her next to last evaluation reflected five unsatisfactory performance areas and 11 areas where she needed improvement. Her last evaluation reflected 15 areas that needed improvement. This is a non-discriminatory, legitimate reason for terminating her. Plaintiff has not rebutted this stated reason.

Plaintiff's grievance against Ms. Chiles was filed before she was terminated. Thus, although the grievance was made a short time before she was terminated, her failure to rebut the stated reason for her termination is also fatal to her claim of retaliation. Furthermore, there is no showing of any connection between the filing

of the grievance and her termination.  Ms. Chiles was not the final decision-maker in this case.  The decision not to renew Williams' contract was made by the Board of Education.  There is no evidence that it was aware that plaintiff had filed a grievance against Ms. Chiles.  Thus, there is a disconnect between the filing of the grievance and the termination of plaintiff that cannot be bridged simply by demonstrating that there was a short lapse of time between the two actions.

## III.  Conclusion

Plaintiff has failed to make out a *prima facie* case of religion-based discrimination of any sort.  Even assuming the existence of a *prima facie* case, plaintiff has failed to rebut defendant's legitimate, non-discriminatory reason for terminating plaintiff.  Therefore, as set forth above, defendant's motion for summary judgment is due to be granted.

A separate Final Judgment in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 11th day of March, 2011

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE